# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JAMES BEVAN,

    Plaintiff,

v.

COUNTY OF LACKAWANNA,

    Defendant.

NO. 3:17-CV-0919

(JUDGE CAPUTO)

## MEMORANDUM

Presently before me is the Motion to Dismiss (Doc. 7) filed by Defendant County of Lackawanna (the "County" or "Defendant"). James Bevan ("Bevan" or "Plaintiff"), a former corrections officer at the Lackawanna County Prison, contends that after he was granted intermittent medical leave from mandated overtime, Defendant adopted a policy in retaliation that resulted in the rapid depletion of Plaintiff's available leave time. Plaintiff alleges that once his available leave was exhausted and he refused to work mandated overtime, Defendant terminated his employment. Defendant's conduct, Plaintiff asserts, violated the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.*, and the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 951 *et seq*. Defendant has moved to dismiss Plaintiff's ADA/PHRA discrimination based on disability and failure to accommodate claims, as well as Plaintiff's FMLA interference and denial of benefits claims. Defendant's motion to dismiss Plaintiff's FMLA interference and denial of benefits claims will be granted because Plaintiff fails to allege that he was denied benefits to which he was entitled under the FMLA. Plaintiff will, however, be permitted to proceed with his ADA/PHRA discrimination and failure to accommodate claims because the facts as alleged in the Complaint sufficiently state such causes of action.

## I. Background

The facts as pled in the Complaint are as follows:

Plaintiff was employed as a corrections officer at the Lackawanna County Prison until he was terminated on June 3, 2015. (*See* Doc. 1, ¶ 14). Plaintiff has a psychological impairment, namely, severe anxiety and depression. (*See id*. at ¶ 15). On account of this impairment, Plaintiff requested, and was granted, intermittent leave for any hours in excess of forty (40) hours per week and/or eight (8) hours per day under the FMLA beginning on September 16, 2014. (*See id*. at ¶ 17).

County corrections officers were routinely mandated to work overtime. (*See id*. at ¶ 24). When mandated, Plaintiff would decline the overtime based on his approved leave and the amount of overtime mandated to Plaintiff would be applied to his leave and subtracted from the allotment to which he was entitled. (*See id*. at ¶¶ 25-26). When he was first granted intermittent leave, Defendant treated intermittent leave in place of overtime "for the purpose of order of subsequent mandates, the same as for employees who had worked the mandated overtime." (*Id*. at ¶ 27).

Beginning on October 26, 2014, though, Defendant instituted a policy mandating Plaintiff for overtime more frequently than his co-workers and in a manner deliberately calculated to require Plaintiff to exhaust his available medical leave. (*See id*. at ¶¶ 23, 28-31). More specifically, every time Plaintiff took intermittent leave "he was returned to the bottom of the mandate list and was the very next employee to be mandated again the very next time overtime was required at the prison. The net effect of Defendant's policy was to devour Plaintiff's contractual leave entitlement." (*Id*. at ¶¶ 29-30). Plaintiff unsuccessfully objected to this policy. (*See id*. at ¶ 31). Plaintiff was terminated on June 3, 2015 after he refused mandated overtime without available time for intermittent leave. (*See id*. at ¶ 32). When he was terminated, Plaintiff had available unexhausted sick and vacation time per his union contract. (*See id*. at ¶ 33).

Plaintiff's employment with the County was governed by the terms of a

Collective Bargaining Agreement (the "CBA"). (*See* Doc. 9, Ex. A, § 1).[1] The CBA's overtime provision states, in pertinent part:

> 1. The County shall be the sole judge of the necessity for overtime.
>
> . . .
>
> 5. Overtime shall be worked as assigned at the direction of the employer. The employer will attempt to assign overtime in accordance with the following procedure: When the employer determines the need for overtime in a classification, it will first ask for volunteers, going from most senior to least senior qualified non-probationary employees in that classification on a rotational basis. If there are an insufficient number of volunteers, the employer shall have the right to assign such work on a non-volunteer basis beginning with the least senior of those employees on the shift on a rotation basis; provided, however, that in a situation which the employer solely determines to be emergency, it shall assign such overtime as is necessary without regard to the above procedure.

(*Id.* at Art. 20, § (B)).

Based on the foregoing, Plaintiff commenced this action against the County on May 25, 2017. (*See* Doc. 1, *generally*). The Complaint sets forth the following claims: discrimination based on disability, failure to accommodate, and retaliation in violation of the ADA (Counts I-III); discrimination based on disability, failure to accommodate, and retaliation in violation of the PHRA (Counts IV-VI); and termination (retaliation), interference and obstruction, and denial of leave in violation

---

[1] The CBA was not attached as an exhibit to the Complaint, (*see* Doc. 1, *generally*), but rather was supplied by Defendant in support of its motion to dismiss. (*See* Doc. 9, Ex. A, *generally*). Nonetheless, the document can be reviewed here because its terms are referenced in the Complaint and "the dispute unquestionably arises out of [Plaintiff's] employment." *Hughes v. United Parcel Serv., Inc.*, 639 F. App'x 99, 103 (3d Cir. 2016); *see also Barnard v. Lackawanna Cnty.*, No. 17-66, 2017 WL 4233030, at *5 n.4 (M.D. Pa. Sept. 25, 2017) (reviewing collective bargaining agreement attached by the defendant in support of its motion to dismiss). Additionally, Plaintiff has not objected to review of the CBA in evaluating the instant motion to dismiss. (*See* Doc. 10, *generally*; Doc. 17, *generally*).

of the FMLA (Counts VII-IX). (*See id*.).

On July 25, 2017, Defendant filed its motion to dismiss. (*See* Doc. 7, *generally*). Defendant seeks dismissal of Plaintiff's ADA and PHRA discrimination based on disability and retaliation claims (Counts I, II, IV, and V), as well as Plaintiff's interference and denial of leave claims (Counts VIII and IX). (*See* Doc. 8, *generally*). The motion to dismiss is fully briefed and ripe for disposition.

## II. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). "Under the 'notice pleading' standard embodied in Rule 8 of the Federal Rules of Civil Procedure, a plaintiff must come forward with 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Thompson v. Real Estate Mortg. Network*, 748 F.3d 142, 147 (3d Cir. 2014) (quoting Fed. R. Civ. P. 8(a)(2)).

When resolving a Rule 12(b)(6) motion, "a court must consider no more than whether the complaint establishes 'enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary elements' of the cause of action." *Trzaska v. L'Oreal USA, Inc.*, 865 F. 3d 155, 162 (3d Cir. 2017) (quoting *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016)). In reviewing the sufficiency of a complaint, a court must take three steps: (1) identify the elements of the claim; (2) identify conclusions that are not entitled to the assumption of truth; and (3) assume the veracity of the well-pleaded factual allegations and determine whether they plausibly give rise to an entitlement to relief. *See Connelly*, 809 F.3d at 787 (citations omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).

## III. Discussion

Defendant, as stated, seeks dismissal of Plaintiff's ADA and PHRA discrimination and failure to accommodate claims, as well as the FMLA interference and denial of leave claims. The sufficiency of the ADA and PHRA discrimination and failure to accommodate claims will be addressed first.[2]

**A.     ADA and PHRA Claims.**

The ADA provides that "[n]o covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). To plead a *prima facie* case of disability discrimination under the ADA, a plaintiff must allege "(1) that he is disabled within the meaning of the ADA, (2) that he is otherwise qualified for the job, with or without reasonable accommodations, and (3) that he was subjected to an adverse employment decision as a result of discrimination." *Sulima v. Tobyhanna Army Depot*, 602 F.3d 177, 185 (3d Cir. 2010). "A plaintiff bringing an ADA failure-to-accommodate claim must establish: '(1) he was disabled and his employer knew it; (2) he requested an accommodation or assistance; (3) his employer did not make a good faith effort to assist; and (4) he could have been reasonably accommodated.'" *Capps v. Mondelez Global, LLC*, 847 F.3d 144, 157 (3d Cir. 2017) (quoting *Armstrong v. Burdette Tomlin Mem'l Hosp.*, 438 F.3d 240, 246 (3d Cir. 2006)). Defendant argues that these claims should be dismissed because: (1) Plaintiff is not a qualified individual within the meaning of the ADA; and (2) Plaintiff's request for exemption from mandatory overtime under the CBA is not a reasonable accommodation. (*See* Doc. 10, 5-10). These contentions will be

---

[2]     The ADA and PHRA claims are to be interpreted consistently and have the same standard for determination of liability. *See Macfarlan v. Ivy Hill SNF, LLC*, 675 F.3d 266, 274 (3d Cir. 2012); *Williams v. Phila. Hous. Auth. Police Dept.*, 380 F.3d 751, 761 n.6 (3d Cir. 2004).

5

discussed in turn.

### 1. Qualified Individual.

The ADA defines a qualified individual as one "who, with or without reasonable accommodations, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). "'A two-part test is used to determine whether someone is a qualified individual with a disability.'" *McNelis v. Pa. Power & Light Co.*, 867 F.3d 411, 415 (3d Cir. 2017) (quoting *Gaul v. Lucent Techs., Inc.*, 134 F.3d 576, 580 (3d Cir. 1998)). "First, the individual must satisfy the prerequisites for the position, such as possessing the appropriate educational background, employment experience, skills, licenses, *etc*. Second, the individual must be able to perform the essential functions of the position held or desired, with or without reasonable accommodation." *Id*. (citation, internal citation, and quotation omitted). Defendant contends that because Plaintiff could not work mandated overtime, he was unable to perform the essential functions of a corrections officer. (*See* Doc. 10, 7).

A job duty is an "essential function" when it is "fundamental" to the position. *See* 29 C.F.R. § 1630.2(n)(1).

> A job function may be considered essential for any of several reasons, including but not limited to the following:
>
> (i) The function may be essential because the reason the position exists is to perform that function;
>
> (ii) The function may be essential because of the limited number of employees available among whom the performance of that job function can be distributed; and/or
>
> (iii) The function may be highly specialized so that the incumbent in the position is hired for his or her expertise or ability to perform the particular function.

*Id*. at § 1630.2(n)(2). Evidence of whether a function is essential may include:

> (i) The employer's judgment as to which functions are essential;
>
> (ii) Written job descriptions prepared before advertising or interviewing applicants for the job;

> (iii) The amount of time spent on the job performing the function;
>
> (iv) The consequences of not requiring the incumbent to perform the function;
>
> (v) The terms of a collective bargaining agreement;
>
> (vi) The work experience of past incumbents in the job; and/or
>
> (vii) The current work experience of incumbents in similar jobs.

*Turner v. Hershey Chocolate U.S.*, 440 F.3d 604, 612 (3d Cir. 2006) (citing 29 C.F.R. § 1630.2(n)(3)). "'Whether a particular function is essential is a factual determination that must be made on a case by case basis based upon all relevant evidence,'" *id*. (internal alterations omitted) (quoting *Deane v. Pocono Med. Ctr.*, 142 F.3d 148 (3d Cir. 1998) (en banc)), which should typically be left for the jury to resolve. *Id*.; *see also Hofacker v. Wells Fargo Bank N.A.*, No. 16-517, 2016 WL 3597458, at *5 (E.D. Pa. July 5, 2016); *accord Keith v. Cnty. of Oakland*, 703 F.3d 918, 926 (6th Cir. 2013) ("[w]hether a job function is essential is a question of fact that is typically not suitable for resolution on a motion for summary judgment.").

The Third Circuit has not decided in a precedential opinion whether overtime can be an essential job function under the ADA. *See Gavurnik v. Home Props, L.P.*, 227 F. Supp. 3d 410, 417 (E.D. Pa. 2017), *aff'd*, - - - F. App'x - - -, 2017 WL 4812558, at *5 (3d Cir. Oct. 25, 2017) (noting that "[u]nder the ADA, overtime may be considered an essential function of a job."). Other Courts of Appeals, though, have found that mandatory overtime can be recognized as an essential job function. *See, e.g,. Tjernagel v. Gates Corp.*, 533 F.3d 666, 673 (8th Cir. 2008); *Davis v. Fla Power & Light Co.*, 205 F.3d 1301, 1306 (11th Cir. 2000). Some district courts have reached this conclusion as well. *See, e.g., Gavurnik*, 227 F. Supp. 3d at 417 (mandatory overtime for snow removal is an essential function of service technician); *Chavira v. Crown Cork & Seal USA, Inc.*, No. 13-1734, 2015 WL 4920094, at *7-9 (D. Minn. Aug. 18, 2015); *Gibson v. Milwaukee Cnty.*, 95 F. Supp. 3d 1061, 1068 (E.D. Wisc.

2015) ("the evidence in the record reveals the absence of a genuine issue of material fact as to whether the ability to work overtime was an essential function of the position of Corrections Lieutenant."); *Smith v. Burlington Cnty.*, No. 02-5581, 2004 WL 1932850, at *4 (D.N.J. July 27, 2004) ("overtime is an essential function of a position as a Burlington County corrections officer" but denying motion for summary judgment); *but see Ward v. District of Columbia*, 211 F. Supp. 3d 58, 64 (D.D.C. 2016) (finding a genuine issue of material fact existed with respect to whether overtime was an essential function of the plaintiff's job); *Reeder v. Cnty. of Wayne*, 177 F. Supp. 3d 1059, 1077-78 (E.D. Mich. 2016) (question of fact existed as to whether working overtime was truly an essential function of the plaintiff's position as a police officer); *Jackson v. O'Reilly Auto. Stores, Inc.*, No. 12-1215, 2014 WL 993269, at *7 (M.D. Tenn. Mar. 12, 2014). These cases finding overtime to be an essential function of an employee's job were decided at summary judgment, underscoring that determining whether a particular function is essential involves a factual inquiry to be made on a case by case basis. *See, e.g., Tjernagel*, 533 F.3d at 668 (affirming the district court's grant of summary judgment to the employer); *Davis*, 205 F.3d at 1302-03 (same); *Gavurnik*, 227 F. Supp. 3d at 421 (granting the defendant's motion for summary judgment); *Chavira*, 2015 WL 4920094, at *13 (same); *Gibson*, 95 F. Supp. 3d at 1074 (granting summary judgment to the defendants on the plaintiff's claim that he should have been allowed to work with a no overtime restriction); *Smith*, 2004 WL 1932850, at *4.

    Here, based on the facts as alleged in the Complaint and the terms of the CBA, and noting that the Third Circuit has made clear that a determination regarding the essential functions of a position is to be made on a case by case basis when considering all the relevant evidence, I cannot conclude on the instant motion to dismiss that overtime was an essential function of Plaintiff's position. While Defendant cites to the overtime provision in the CBA, that is only one factor to be considered when determining whether a function is truly essential. *See* 29 C.F.R. §

8

1630.2(n)(3)(v). Furthermore, in view of the other factors and reasons for considering a job function essential as set forth in the applicable regulations, *see id*. at § 1630.2(n)(2)-(3), and given the well-pled allegations in the Complaint, Plaintiff has sufficiently alleged that he was able to perform the essential functions of his position. As one district court explained:

> Plaintiff was able to perform h[is] regular job functions but [ ]he was unable to work certain periods of mandated overtime. [H]e is not restricted from performing all of h[is] job responsibilities. At this early stage in the litigation, the Court lacks the information required for consideration of the above-mentioned factors. Accordingly, these factors cannot be weighed without further fact-finding.

*Lewis v. Livingston Cnty. Ctr. for Nursing & Rehab.*, 30 F. Supp. 3d 196, 209 (W.D.N.Y. 2014) (alterations added and internal quotation, citation, and alteration omitted); *see also Colpoys v. Cnty. of Erie*, No. 12-908, 2013 WL 5437635, at *5-6 (W.D.N.Y. Sept. 27, 2013). As such, Plaintiff's ADA and PHRA claims will not be dismissed on this ground.[3]

### 2. Reasonable Accommodation.

The ADA requires an employer to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability," unless the employer can demonstrate that the accommodation would "impose an undue hardship on the operation of the business." 42 U.S.C. § 12112(b)(5)(A). Under the ADA, a "reasonable accommodation" includes:

---

[3] In its reply, Defendant cites my recent decision in *Barnard*. *See Barnard*, 2017 WL 4233030, at *5. *Barnard*, though, is inapposite to the matter *sub judice*. There, I concluded that an essential function of the position at issue included full-time attendance because the applicable agreement provided that the workweek consisted of forty (40) hours, *i.e.*, five (5) days of eight (8) hours, and mandated that there "will be no split shifts." *Id*. The plaintiff in *Barnard*, though, expressly averred that she could not satisfy that requirement. *See id*. Here, conversely, Plaintiff alleges that he could meet the essential function of working a full shift. (*See* Doc. 1, ¶ 17). The question in this case instead is whether mandated overtime is an essential function of Plaintiff's position, which, for reasons explained in the text, cannot be resolved at present.

> job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities.

42 U.S.C. § 12111(9)(B). "Reasonable accommodation further includes the employer's reasonable efforts to assist the employee and to communicate with the employee in good faith, under what has been termed a duty to engage in the interactive process." *Williams*, 380 F.3d at 761 (quotation and internal citation omitted). "[A]n employer who has received proper notice cannot escape its duty to engage in the interactive process simply because the employee did not come forward with a reasonable accommodation that would prevail in litigation." *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 317 (3d Cir. 1999). "The issue of 'reasonable accommodation' presents a fact question." *Turner*, 440 F.3d at 614; *Buskirk v. Apollo Metals*, 307 F.3d 160, 170 (3d Cir. 2002).[4]

Defendant seeks dismissal of Plaintiff's ADA and PHRA claims on the basis that exemption from mandated overtime is not a reasonable accommodation. (*See* Doc. 8, 8-10). More particularly, Defendant argues that the requested accommodation was not reasonable because it would "constitute a violation of the seniority principals of the CBA, infringe on the rights of other corrections officers and expose Defendant to the risks associated with union grievances." (*Id.* at 9-10). In support, Defendant's rely on *Kralik v. Durbin*, 130 F.3d 76 (3d Cir. 1997).

In *Kralik*, the issue before the Third Circuit was whether the plaintiff's requested accommodation was "unreasonable because it would require the Commission to infringe on the seniority rights of other employees in the collective bargaining agreement?" *Id.* at 81. There, the plaintiff sought "a union waiver of the

---

[4] The Third Circuit recently observed that "a request for FMLA leave may qualify, under certain circumstances, as a request for a reasonable accommodation under the ADA." *Capps*, 847 F.3d at 156-57 (citation omitted).

forced overtime provision. . . ." *Id*.[5] In considering the employee's appeal of the district court's entry of summary judgment in favor of the employer, the Third Circuit made clear that while the requested accommodation violated the collective bargaining agreement, it agreed that "the collective bargaining agreement is not necessarily decisive because the union and the Commission together may modify the agreement as they did on a temporary basis by relieving her from forced overtime." *Id*. However, the Court of Appeals emphasized that the record was devoid of evidence that the union expressed a willingness to waive the forced overtime provision for the plaintiff for as long as she was a qualified individual with a disability. *See id*. The *Kralik* court then explained that "an accommodation to one employee which violates the seniority rights of other employees in a collective bargaining agreement simply is not reasonable." *Id*. at 83. And, "even minor infringements on other employees' seniority rights impose unreasonable burdens on employers who, by reason of those infringements, must face the consequences of violating the collective bargaining agreement." *Id*. Thus, as stated by the Third Circuit, "it is appropriate for the union, rather than the employer, to make the determination that the infringement is justifiable by releasing the employer from its obligation to follow the seniority provisions of the collective bargaining agreement to accommodate a qualified individual with a disability." *Id*.

*Kralik*, which was decided on appeal after summary judgment was granted to the employer, does not require dismissal of Plaintiff's failure to accommodate claim. First, as noted in *Kralik*, the CBA is not necessarily decisive if the union and the employer agreed to a modification of its terms. *See Kralik*, 130 F.3d at 81. Although Plaintiff has not alleged that the union and Defendant agreed to a modification of the CBA, he does aver that he was initially granted an accommodation. (*See* Doc. 1, ¶ 17).

---

[5] The forced overtime provision stated, *inter alia*, that "the overtime shift shall be assigned to the employee currently working with the least amount of seniority." *Krakik*, 130 F.3d at 78.

11

Further, while the terms of the CBA in this case provide for the assignment of mandated overtime on a "rotation basis," the agreement in *Krakik* stated that "the overtime shift shall be assigned to the employee currently working with the least amount of seniority." *Krakik*, 130 F.3d at 78. Thus, it is not clear that the overtime provision here is seniority-based or that the CBA (and/or the rights of other employees) would be violated by allowing Plaintiff to use authorized intermittent leave to avoid working overtime hours. In fact, the Complaint suggests that employees could use vacation or sick time to avoid mandated overtime. (*See* Doc. 1, ¶ 33). Given these factual questions and reiterating that whether a requested accommodation is reasonable involves a fact-specific inquiry, resolution of this issue on the instant motion to dismiss in this case is not proper. *See Lewis*, 30 F. Supp. 3d at 211-12 ("decisions relating to accommodations must be decided on a case-by-case basis and require fact-specific inquiries that typically cannot be taken at the early stages of litigation."). Dismissal of the failure to accommodate claim is also not warranted since the Complaint adequately alleges that Defendant failed to engage in the interactive process. *Accord Smith*, 2004 WL 1932850, at *4 & n.11 (denying motion for summary judgment). Plaintiff will be permitted to proceed with his ADA and PHRA claims.

**B.  FMLA Claims.**

The FMLA was enacted "to 'balance the demands of the workplace with the needs of families,' and 'to entitle employees to take reasonable leave for medical reasons . . . in a manner that accommodates the legitimate interests of employers.'" *Conoshenti v. Pub. Serv. Elec. & Gas Co.*, 364 F.3d 135, 140-41 (3d Cir. 2004) (quoting 29 U.S.C. § 2601(b)(1), (b)(3)). To that end, the FMLA allows covered employees to take as many as twelve weeks of leave from work as a result of a "serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). "[W]hen employees invoke rights granted under the FMLA, employers may not interfere with, restrain, or

deny the exercise of or attempt to exercise these rights. Nor may employers discharge or in any other manner discriminate against any individual for opposing any practice made unlawful." *Capps*, 847 F.3d at 151 (citations, internal citation, quotation, and footnote omitted).

Here, Defendant seeks dismissal of Plaintiff's FMLA interference and denial of leave claims in Counts VIII and IX of the Complaint. (*See* Doc. 8, 10-12). Defendant argues that those claims are subsumed by Plaintiff's FMLA retaliation claim (which Defendant does not seek to dismiss), or, alternatively, Counts VIII and IX are identical and therefore Count IX should be dismissed as redundant. (*See id*).

> To make a claim of interference under the FMLA, a plaintiff must establish:
>
> (1) he or she was an eligible employee under the FMLA; (2) the defendant was an employer subject to the FMLA's requirements; (3) the plaintiff was entitled to FMLA leave; (4) the plaintiff gave notice to the defendant of his or her intention to take FMLA leave; and (5) the plaintiff was denied benefits to which he or she was entitled under the FMLA.

*Ross v. Gilhuly*, 755 F.3d 185, 191-92 (3d Cir. 2014) (quoting *Johnson v. Cmty. Coll. of Allegheny Cnty.*, 566 F. Supp. 2d 405, 446 (W.D. Pa. 2008)). In order to establish the fifth prong of the analysis, the Third Circuit has "made it plain that, for an interference claim to be viable, the plaintiff must show that FMLA benefits were actually withheld." *Id*. at 192 (citing *Callison v. City of Phila.*, 430 F.3d 117, 119 (3d Cir. 2005) ("In order to assert a claim of deprivation of entitlements, the employee only needs to show that he was entitled to benefits under the FMLA and that he was denied them.")).

Plaintiff maintains that he sufficiently pled the fifth prong of the interference analysis based on his allegation that Defendant would place him at the bottom of the overtime mandate list whenever he used his intermittent leave and "[t]he effect was a denial of Mr. Bevan's entitled benefit to take intermittent leave as a reasonable

accommodation . . . ." (Doc. 10, 17). Plaintiff's argument that Defendant "interfered with his entitlement to take FMLA leave free from later discrimination confuses interference with retaliation and is thus misdirected." *Ross*, 755 F.3d at 192. As the Third Circuit has made clear, "'an interference action is not about discrimination; it is only about whether the employer provided the employee with the entitlements guaranteed by the FMLA.'" *Id*. (alterations omitted) (quoting *Callison*, 430 F.3d at 120). Here, Plaintiff alleges that Defendant granted his request for FMLA leave and he was able to use that leave. (*See* Doc. 1, ¶¶ 17, 32). Thus, as Plaintiff does not allege that Defendant withheld or denied any entitlement guaranteed by the FMLA, he fails to state claims for interference and denial of leave. *See*, *e.g.*, *Ross*, 755 F.3d at 192. Counts VIII and IX of the Complaint will be dismissed.[6]

## IV. Conclusion

For the above stated reasons, Defendant's motion to dismiss will be granted in part and denied in part. Plaintiff's FMLA interference and denial of leave claims will be dismissed with prejudice. Defendant's motion to dismiss will otherwise be denied.

An appropriate order follows.

December 12, 2017  /s/ A. Richard Caputo
Date  A. Richard Caputo
  United States District Judge

---

[6] Third Circuit "precedent supports the notion that in civil rights cases district courts must offer amendment - irrespective of whether it is requested - when dismissing a case for failure to state a claim unless doing so would be inequitable or futile." *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 251 (3d Cir. 2007); *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008). Amendment is futile "if the amended complaint would not survive a motion to dismiss." *Budhun v. Reading Hosp. & Med. Ctr.*, 765 F.3d 245, 259 (3d Cir. 2014). Although Plaintiff requests the opportunity to amend if the Complaint is found to be "insufficiently specific," (Doc. 10, 20), because Plaintiff cannot allege the fifth prong of an interference claim, amendment of Counts VIII and IX of the Complaint would be futile. Thus, those claims will be dismissed with prejudice.

14